No. 16,752.

CITY OF GRAND JUNCTION *v.* LASHMETT.
(247 P. [2d] 909)

Decided August 29, 1952.

Mr. John C. Banks, Mr. James K. Groves, for plaintiff in error.

Messrs. Adams, Heckman & Traylor, Mr. Wm. M. Ela, for defendant in error.

Mr. Leonard M. Campbell, Mr. Arthur C. Gregory, Mr. Glenn G. Saunders, Mr. Frank L. Moorhead, Mr. A. Allen Brown, Mr. Robert Delaney, Mr. Robert M. Gilbert, Mr. Conrad L. Ball, Mr. William L. Lloyd, Messrs. Lee, Bryans, Kelly & Stansfield, amici curiae.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

Defendant in error, a minor, by her parents as next friends, was plaintiff in the trial court where she had a judgment for damages against defendant, the City of Grand Junction, for personal injuries, in the sum of $12,500. Reference will be made to the parties as they appeared in the trial court, defendant in error being designated as plaintiff or as the child; and plaintiff in error either as defendant or city.

On October 11, 1949, defendant was engaged in the installation of water meters in service lines at various localities throughout the city, one of which was the five-hundred block on Pitkin Avenue. In this particular lo-

cality the meters were being installed within the parking between the sidewalk and the street curb. To make the installation required the digging of pits to the service line, the dimensions of said pits being approximately 2½ feet wide, 3 feet long, and 45 inches deep. The center of the meter when installed was 20 inches from the face of the curb and 13 feet from the edge of the sidewalk. During the course of this program it at times became necessary to leave some of said pits open and unfilled from the closing of one day's work until the next day, but on the particular date indicated, it would seem that there remained only one such pit left open over night, it being at the curb as above stated and between No. 530 and No. 536 Pitkin Avenue. Dirt excavated from the pit was placed about the hole and, as was the custom of the crew at quitting time, two warning flares were set out, one at either end of the dirt pile. These torches were the flare-pot type, commonly used wherever construction work is being carried on. The flares were probably lighted and placed in position at or in the neighborhood of four o'clock P. M., when the men ceased work.

The child at that time was approximately 6 years, 9½ months of age, and resided with her parents on 5th Street, just around the corner from Pitkin Avenue. At about 3:35 o'clock P. M., she and a little friend, Barbara Carroll, who lived at No. 518 Pitkin Avenue, came home from school, went to their respective homes for a few moments, and without changing clothing went out to the sidewalk on Pitkin Avenue to play. These two and a smaller youngster of another neighbor soon engaged in a game of their own origin playing Indians, using the lighted flare at the meter excavation as a camp fire. They did not touch or handle the flare pot, its province being solely to serve as a camp site of the chief, which role plaintiff assumed. The other two youngsters were sent off on a mission to secure sticks to use as guns, and while they were gone, in some manner — the exact facts

of which are unknown — the back of plaintiff's dress, comprised of light material, caught fire. She ran towards her home and on the way was seized by neighbors who succeeded in tearing off her clothing and extinguishing the fire. She, however, was seriously burned, spent many months thereafter in the hospital under doctor's care, and has incurred permanent scars and disfigurement.

On behalf of plaintiff it is contended that the city was negligent in using the oil burning flare pots above described as warning devices at the particular time and place mentioned where it was known that children were in the habit of playing, and plaintiff's first cause of action is based upon such allegation of negligence. Her second cause is founded upon the theory of attractive nuisance, but clearly is not sustained by any evidence in the record.

When plaintiff's counsel, after presenting their evidence in chief, rested their case, counsel on behalf of the city moved for a directed verdict, including as reasons in support of his motion, the insufficiency of the evidence on the issue of plaintiff's negligence; that no evidence of negligence appears, unless it be said that the use of such flares as a warning device be such negligence; and that "as a matter of law, it's not negligence for the city to use such flares." This motion was overruled. Following the conclusion of all the evidence, defendant's counsel again moved for a directed verdict, which motion was denied. The first specification of points here presented is that the trial court erred in not directing a verdict for the defendant for the following reasons: " * * * (b) There was no evidence of negligence on the part of the defendant."

Distasteful as is the task, and however much we may dislike to do so, we are convinced that it is our obligation, in the performance of our duty here, to reverse the judgment of the trial court on the aforementioned specification, which is the only one to which we need give

attention. The remainder of this opinion will be devoted to a discussion of the reasons why the position we have taken is the only one open to us.

■ ■ At the outset it is well to recall that negligence is never presumed, but must be proven by a preponderance of the evidence. Proof of the happening of an accident or the occurrence of an injury alone raises no inference of negligence. *Home Public Market v. Newrock,* 111 Colo. 428, 432, 142 P. (2d) 272; *Saliman v. Silk,* 118 Colo. 220, 222, 194 P. (2d) 304. "It is fundamental that the mere happening of an accident does not raise any presumption of negligence." *Maloney v. Jussel,* 125 Colo. 124, 241 P. (2d) 862, 867.

Aside from the contention on the part of the city that there is no evidence supporting plaintiff's claim that her clothing caught fire from the flare, there is no dispute as to the facts in the case. No witness testified as to having seen the child's clothing catch on fire and it is assumed that the fire was caused by her getting too close to the flare pot. Let us assume that this theory is correct; that the child's clothing actually was set on fire by contact with the flame of the flare; and under such assumption there would be absolutely no dispute whatsoever as to the facts of the case. Counsel for the city admit that it was engaged in installing water meters; that for this purpose it was necessary to dig holes or pits in the parking and near the curb along Pitkin Avenue; that such a pit was dug at the point claimed; that it was left open over night and that two of these flare pots were left there ablaze by the workmen as warnings of danger to the public. It further is admitted that no watchman was employed, no fences, barricades or other means to keep people away from said pits, or as a precaution against injury from the flame of the flares, were used. Considering every feature of the case in the light most favorable to plaintiff, the whole matter pinpoints to the single question as to whether the use of such flares by the city was negligence as a matter of law.

■ ■ Where the facts are in dispute and the situation is such that reasonable men might draw different conclusions from the evidence, then the case must be submitted to the jury for determination. Such is the usual procedure. Where, however, as here, the evidence is not in conflict and there is no dispute as to the facts of the case, the issue on the question of negligence is resolved into one of law for determination by the court. The question before the court then is: Are the facts of this case, undisputed and considered in the light most favorable to plaintiff, sufficient to support her charge of negligence on behalf of the defendant? *City of Pueblo v. Smith*, 57 Colo. 500, 502, 143 Pac. 281; *Girardot, Administrator v. Williams*, 102 Colo. 456, 458, 80 P. (2d) 433.

■ Counsel on behalf of plaintiff contend that there are additional factual matters involved. They insist that the defendant city was under obligation to do other and different things in addition to setting out the flares. They complain that no watchman was left to keep children away from these torches; that the torches should have been barricaded or that a different type of warning should have been used instead thereof. An analysis of these contentions shows that they but beg the question. The warning device used by the city, the flare itself, is said to have been the thing that was directly responsible for the injury to this child. Had a watchman been employed to keep children away from the flares, the use thereof would have been unnecessary. Had these pits been covered, fenced or otherwise substantially barricaded, no flare would have been required. Without the torch in the picture, the injury of which complaint is made, could not have resulted. On the other hand, suppose the pit had been left open and no flare or other warning left at the openings. While the child might have fallen into the hole and been seriously injured, certainly she could not have been burned. It goes without saying that, to have left this pit open without any

type of warning whatsoever, and had someone fallen into it, the city definitely would have been liable for any injury sustained on account thereof. It is, therefore, readily apparent that the issue in this case is not one of what the city failed to do, but whether that which the city did do, constitutes negligence.

The city is not an insurer against injury to all persons who have the right to use its streets and thoroughfares. The law "imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care." *City of Pueblo v. Smith, supra.* The very purpose of a flare at an excavation in a city street is that of a warning of danger. The record in this case shows definitely that not only the plaintiff, but also her companions, on the fateful evening fully recognized the danger from fire and testified positively that they would not play with the flame from the flare. The city was under obligation to place a warning of danger at the excavation. The use of flares was in accordance with the general custom of contractors and construction workers and was a reasonable means of warning the public against danger.

Cases where damages are claimed from injury caused by safety warnings themselves rather than from the thing that the warning is designed to protect against are rare indeed. No Colorado case has been called to our attention, and we have found none, wherein damages are claimed for injury resulting from a flare placed as a warning device. Such a case, however, is that of *Clark v. City of Bremerton,* 1 Wash. (2d) 689, 97 P. (2d) 112, wherein the trial court dismissed the action at the close of all the evidence, which ruling was affirmed by the supreme court of Washington. Because of the logical consideration of that case we quote therefrom the following: "It is a matter of common knowledge that open flares of the type used here are in general use on city streets, as well as country highways, to give warning of

danger where work is in progress. The city was under a legal duty to warn against the open trench and, to that end, employed an instrumentality in common use. It may be that an open flare has some attraction for children; on the other hand, it brings home to them strongly the possibility of danger. The city was faced with a dilemma. The trench required the use of lights involving, it may be, some measure of danger. The almost certain risk of injury from an open, unguarded trench in a public street would be greater than the risk involved in the maintenance of the lights. The utility of the lights in guarding the ditch outweighed the danger of their use."

█ Since the city in this case, if liable at all, is liable for what it did (setting out the flares) and not for what it failed to do, and since what it did was, under all the facts and circumstances connected with this matter, in accordance with good workmanlike practice and in the exercise of due care and precaution as against any reasonably anticipated or forseeable danger, and it not being an insurer against accidents, the facts taken as a whole are insufficient to sustain the charge of negligence. The motion on behalf of defendant seeking direction of a verdict in its favor should have been granted. Failure to do so was error.

The judgment of the trial court, therefore, is reversed, and the cause remanded with direction to vacate its judgment on the verdict and order a dismissal of the action.