Nick DOGGENDORF (Plaintiff), Respondent,

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation (Defendant), Appellant.

No. 30368.

St. Louis Court of Appeals.

Missouri.

March 15, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied April 12, 1960.

William M. Corrigan, Frank B. Green, St. Louis, for defendant-appellant.

Don B. Sommers, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This appeal arises out of a suit for damages for personal injuries sustained by Charles Doggendorf, the plaintiff in Count I, and for property damage to the automobile owned by Nick Doggendorf, plaintiff in Count II, when the vehicle was struck in the rear by a streetcar owned and operated by defendant St. Louis Public Service Company. Trial by jury resulted in a verdict in favor of Charles Doggendorf in the amount of "no dollars" and in favor of Nick Doggendorf in the amount of $320.30. Within the allowable time defendant filed a motion for a new trial as to both causes of action, and Charles Doggendorf filed a motion for a new trial on Count I on the measure of damages only. The court below granted a new trial, as to all issues on Count I, but overruled defendant's motion for a new trial on Count II. Hence, this appeal involves only the judgment in favor of Nick Doggendorf on his property damage claim.

The accident occurred on October 6, 1956, in the City of St. Louis, at the intersection of Grand and Hickory Avenues. Grand Avenue runs in a north and south direction, and Hickory Avenue runs east and west. Two sets of tracks are located approximately in the middle of Grand Avenue, on which defendant's streetcars are operated, the northbound tracks being to the east, and the southbound to the west.

There was a sharp conflict between the plaintiff's and the defendant's version of the manner in which the accident occurred. Plaintiff's evidence was that Charles, driv-

ing the automobile owned by his father, Nick, in a northernly direction on Grand Avenue, stopped for a major stop sign at Caroline Street, just as a northbound streetcar also stopped there to take on passengers. Charles' automobile was then to the right, or east of the streetcar. While the streetcar was loading, Charles proceeded north on Grand Avenue for about a half-block, at which point he pulled to his left and onto the northbound streetcar tracks, and continued northbound for approximately 500 feet until he reached Hickory Street. The automobile's maximum speed between Caroline Street and Hickory Street was 20 to 30 miles per hour. Charles intended to make a left turn into Hickory Street, and signalled accordingly with his left arm out of the window, but was forced to stop in order to permit southbound traffic to pass by. After he had been stopped for about 10 to 15 seconds, he heard the gong of a streetcar sounding behind him, looked into his rearview mirror, and saw the streetcar just as it struck the rear end of the automobile. He had not looked in his rearvision mirror nor seen the streetcar after he left Caroline Street, and could not estimate the speed of the streetcar at the time of impact. The automobile was knocked across Grand Avenue and came to rest at the west curb.

Defendant's evidence was that the northbound streetcar was about 100 feet south of the south curb of Hickory Street, traveling approximately 25 miles per hour, when the automobile driven by Charles passed to its right at a speed of 30 to 35 miles per hour. When the streetcar was 60 to 65 feet, and the automobile about 30 to 40 feet, south of the south curb of Hickory, the automobile swerved to the left onto the northbound tracks, directly in the path of the streetcar, and was brought to a sudden stop even with the south curb of Hickory. When the automobile swerved in front of the streetcar the operator applied the emergency brake in an effort to avoid the collision. According to the operator, it would have required 125 feet to bring the street-

car to a stop when traveling 25 miles per hour. He testified that while the application of the emergency brakes reduced the speed, the streetcar was traveling about three miles per hour when it struck the rear of the automobile.

Defendant's only assignments of error are that the trial court erred in giving Instruction No. 1, and erred in overruling defendant's motion for a new trial on Count II. The disputed instruction reads:

"The Court instructs the jury that if you find from the evidence that on the occasion mentioned in evidence Nick Doggendorf was the legal owner of a 1952 Chevrolet automobile and that plaintiff Charles Doggendorf was operating said automobile in a northwardly direction on Grand Avenue and that he stopped at Hickory Street preparatory to making a lefthand turn onto Hickory Street in such a manner that the automobile was upon a portion of the northbound streetcar track on Grand Avenue and that defendant's northbound Grand Avenue streetcar was being operated upon said track to the rear of said automobile and that the streetcar overtook the said automobile, if you so find, and that the operator of the streetcar negligently and carelessly allowed it to run into and collide with the rear end of the automobile, if you so find, and that as a direct result of such negligence, if any, on the part of the defendant, the plaintiff, Charles Doggendorf was injured and the automobile of plaintiff, Nick Doggendorf, was thereby damaged, then, and in that event, the plaintiffs are entitled to recover and your verdict must be for plaintiffs and against the defendant."

Defendant contends that this instruction was erroneous and prejudicial because plaintiff failed to hypothesize the period of time plaintiff's automobile was stopped before it was struck from the rear by the streetcar. Plaintiff's answer to that argument is that his case was predicated upon

the rear-end collision doctrine, and that the form of his instruction has been approved in the following cases involving that doctrine: Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68; Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360; Chiodini v. Terminal Railroad Ass'n of St. Louis, Mo. App., 287 S.W.2d 357, and Witherspoon v. Guttierez, Mo., 327 S.W.2d 874.

■ The present concept of the rear-end collision doctrine was recognized in Jones v. Central States Oil Co., supra. It has been defined as " * * * the doctrine or rule of law which recognizes that if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is *proceeding,* and some other person *traveling* behind him in the same direction *overtakes* him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the *overtaking* vehicle." (Emphasis ours.) Hughes v. St. Louis Public Service Co., supra [251 S.W.2d 362]. As the emphasized words indicate, the doctrine originally contemplated that both vehicles involved would be in motion.

■ The instant case does not involve such a factual situation, for both parties agree that plaintiff's automobile was stopped and at rest at the time the streetcar struck it. Nevertheless, under a very recent decision of the Supreme Court, plaintiff's evidence made a jury case, either under the rear-end collision doctrine, or the res ipsa loquitur doctrine. See the two opinions in Boresow v. Manzella, Mo., 330 S.W.2d 827, 831. In the light of that case, evidence that a vehicle has been stopped and at rest for from 10 to 15 seconds in the place and under the circumstances as shown by plaintiff's evidence in the instant case, and that it was then struck by another vehicle approaching from the rear, will justify an inference of

negligence against the operator of the striking vehicle.

One of the essential elements of the rear-end collision doctrine, where two moving vehicles are involved, is that the plaintiff's evidence must show, and the jury under a proper instruction must find, that plaintiff was driving in a part of the road where he had a right to be. Jones v. Central States Oil Co., supra. Merely hypothesizing in an instruction that the defendant ran into the rear of the plaintiff's car would not be sufficient. Jones v. Central States Oil Co., supra; MACA Bulletin, December, 1959, Mo. 25, p. 47. By the same token, if the rear-end collision doctrine is to be extended to apply to a factual situation where the foremost vehicle is at rest, but the length of time it has been at rest is in dispute, then it is not sufficient to merely hypothesize that the defendant's car ran into the rear of plaintiff's car while it was stopped. That issue, it should be noted, was not in dispute in Boresow v. Manzella, supra.

■ The purpose of a verdict directing instruction is to make clear to the jury the essential fact issues it must decide, and therefore the instruction must present the facts essential in law to support the verdict. Steele v. Woods, Mo., 327 S.W.2d 187; Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109; Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756. Here the parties were in agreement that the plaintiff's automobile was at rest at the time of the impact; that it was in a place where it had a right to be; and that it was struck from the rear by defendant's streetcar. But the issue sharply in dispute was the essential fact omitted from plaintiff's instruction —the length of time it had been stopped before the collision occurred. As plaintiff's verdict-directing instruction was drawn, it authorized the jury to find in favor of plaintiff even if they discredited all the evidence offered by him, and believed the defendant's evidence. And, as was said in Pijut v. St. Louis Public Service Co., Mo., 330 S.W.2d 747, 752, " * * * This cannot be permitted. To allow plaintiff in this case this

flexibility would be to permit her to obtain a verdict regardless of the manner in which the collision occurred * * *."

Since the judgment must be reversed for the error in plaintiff's instruction it becomes unnecessary to pass upon defendant's second contention on appeal.

The Commissioner therefore recommends that the judgment in favor of plaintiff, Nick Doggendorf, be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is reversed and the cause remanded for a new trial.

ANDERSON, Acting P. J., RUDDY, J., and SAM C. BLAIR, Special Judge, concur.