**Maurine BETTNER, Petitioner,**

v.

**Robert BORING, Respondent.**

**No. 87SC208.**

Supreme Court of Colorado,
En Banc.

Nov. 28, 1988.

Bennett and Hollaway, John F. Bennett, Cuba Y. Hollaway, Colorado Springs, for petitioner.

William M. Lederer, Colorado Springs, for respondent.

VOLLACK, Justice.

In this personal injury action arising from an automobile accident, Maurine Bettner asked this court to review the court of appeals' reversal of the jury's verdict in her favor. The court of appeals ruled in *Boring v. Bettner,* 739 P.2d 884 (Colo.App. 1987), that the trial court committed reversible error when it declined to give the plaintiff's tendered jury instruction on the presumption of negligence arising from a rear-end collision. We granted certiorari and now conclude that the trial court's refusal to give the tendered instruction under the facts of this case did not constitute reversible error. We reverse the court of appeals' ruling and remand the case for reinstatement of the jury's verdict.

## I.

The issue on which we granted certiorari is whether the trial court committed reversible error when it declined to instruct the jury that a presumption of negligence arises from a rear-end collision, even though in this case the plaintiff's vehicle was ten feet off the road and was not a factor in the alleged negligence of the defendant. In January 1983 Robert Boring, the respondent before us and the plaintiff below, was driving a 1978 Mustang on an icy portion of Interstate 25 near Pueblo, Colorado. Boring did not own the car he was driving; he had borrowed it from an acquaintance. The testimony at trial established that there was snow and sleet, and

that the roads were icy and snowpacked. A semitractor-trailer had turned over and was blocking part of the highway, and emergency vehicles had already responded to that accident. Boring testified that he and the drivers around him attempted to slow down on the icy highway when they came upon the accident and emergency vehicles. In maneuvering between a truck and another car, Boring's vehicle slid and the left door of the Mustang slid against the left rear tire of the truck.

The truck did not stop, but Boring pulled his vehicle off the highway and into a field which he testified was approximately ten feet off the road. An investigating officer's estimate was that Boring's vehicle was stopped twelve to fifteen feet past the paved shoulder, which he estimated to be ten feet wide. Boring stepped out of the car to inspect for damage, determined that there were only a few minor scrape marks, and decided not to report the incident to law enforcement authorities. Boring climbed back into the car and placed his foot on the brake. The automatic transmission was in parking gear and Boring was "about to place the key into the ignition" when he "received an impact which knocked [the vehicle] 15 feet forward." The left rear corner of the Mustang had been struck by a Datsun pickup truck with a camper shell which was being driven by Maurine Bettner, the petitioner here and the defendant below. Boring spoke briefly with Bettner, and they both gave statements to the state trooper who arrived to investigate the accident. The trooper testified that "[t]he whole road was icy" and that there were other "vehicles in the ditch and median strip ... [that] had slid off the road."

The accident occurred around 8:30 a.m. Boring testified at the trial in 1985 that over the course of that day he experienced increasing discomfort in the back of his neck and eventually sought medical treatment. His neck pain became an ongoing condition and Boring was still under medical supervision at the time of trial, two years after the accident.

At the 1985 trial, Boring testified about his involvement in an automobile accident in Louisiana ten years earlier in which he received neck injuries. He testified that as a result of that earlier accident, he suffered neck pain and left arm pain from 1973 until the 1983 accident in Colorado.

Boring filed suit against Bettner for the damages he incurred as a result of the accident. A jury trial was held in January 1985. Boring's counsel tendered the jury instruction which states that negligence is presumed when a motor vehicle is struck from the rear. The trial court declined to give this instruction to the jury because the evidence did not support its use. The jury found no negligence on the part of the defendant and the trial court entered judgment in favor of the defendant, Bettner.

Boring appealed on the issue of the rejected jury instruction. In a published opinion, two members of the court of appeals panel held that the trial court committed reversible error when it refused to give the requested rear-end collision instruction. The dissenting judge maintained that the rear-end collision instruction did not apply to the facts of this case. Bettner filed a petition for certiorari review of the court of appeals' reversal, and we granted certiorari.

## II.

Boring's counsel submitted two jury instructions which were both rejected by the trial court. Rejected Instruction Number 1 stated: "If a motor vehicle is struck from the rear, the driver striking the vehicle ahead is negligent." *CJI–Civ.2d* 11:12 (1980). Rejected Instruction Number 2 stated:

> "Presumptions" are rules based upon experience or public policy and established in the law to assist the jury in ascertaining the truth.
>
> In this case the law presumes that the defendant drove her car negligently when she caused it to collide with the rear of the Plaintiff's vehicle.
>
> Unless and until the presumption is outweighed by evidence to the contrary which has been proved by a preponder-

ance of the evidence, you must consider the presumption with the other evidence in arriving at your verdict.

In rejecting the instruction, the court held: "I don't feel that the rear-end instruction is applicable to a vehicle leaving the highway and striking a stationary object, in this case happening to be a car. I think it's not designed for this situation and so I'm not going to give it." [1]

The court of appeals held that it is "illogical to deny this plaintiff the presumption instruction because he was *more* cautious and did move his vehicle farther from the zone of danger." *Boring v. Bettner*, 739 P.2d 884, 885 (Colo.App.1987) (emphasis in original). The court of appeals also rejected Bettner's argument that the instruction did not apply because the collision was caused by a sudden emergency. *Id.*

## A.

■■■ The rear-end collision jury instruction is derived from our holding in *Iacino v. Brown*, 121 Colo. 450, 217 P.2d 266 (1950). In *Iacino*, the plaintiff's vehicle was legally parked on the right side of the street and the plaintiff was sitting inside his car when the defendant drove his vehicle into the rear of the plaintiff's parked car. Brown sued for damages, and this court held:

From the admitted facts, which are that defendant was in control of an automobile which collided with the rear end of plaintiff's automobile without any fault whatever on the part of plaintiff, there is a presumption of negligence sufficient to make a prima facie case. "The thing itself speaks," or the doctrine of res ipsa loquitur applies here, for the simple season [sic] that the plaintiff could not reasonably be expected to account for any cause of the accident not within his knowledge.

*Id.* at 454, 217 P.2d at 268 (citation omitted).[2] When a rear-end collision instruction is given to the jury, the jury is instructed that the presumption is rebuttable. The defendant can rebut the presumption by presenting evidence that his negligence was not the cause of the plaintiff's injuries. *Holmes v. Gamble*, 655 P.2d 405, 408 (Colo. 1982).

The rear-end collision instruction has not been analyzed by this court under the type of facts presented here. The question before us now is whether the court of appeals correctly held that the trial court committed reversible error when it determined that, under these particular facts, the rear-end collision instruction did not apply.

The general rule in cases of rear-end collisions is that the driver of the car that follows and overtakes the car in front is

1. The court of appeals' opinion does not make it clear which "rear-end instruction" was being referred to in the court's opinion. Since the first instruction was not presented in the proper form for a presumption instruction and the second instruction was, we address ourselves to the second, more complete instruction.

2. Under the doctrine of *res ipsa loquitur*, a rebuttable presumption of the defendant's negligence arises if the plaintiff's circumstantial evidence shows that: (1) the event is one which ordinarily does not occur in the absence of negligence; (2) causes other than the defendant's negligence have been sufficiently eliminated by evidence; and (3) negligence is within the scope of the defendant's duty to the plaintiff. *Holmes v. Gamble*, 655 P.2d 405, 408 (Colo. 1982). If the circumstantial evidence of these elements establishes that "it is more likely that the event was caused by negligence than that it was not," a case may be submitted to the jury on the theory of *res ipsa loquitur* and the defendant

can rebut the presumption with evidence that the event which resulted in the plaintiff's injuries was not due to the negligence of the defendant. *Id.; Montgomery Elevator Co. v. Gordon*, 619 P.2d 66, 68–69 (Colo.1980).

The doctrine of *res ipsa loquitur* can only be applied when negligence is "either the *predominant or the only reasonable explanation* shown for the accident." *Oil Bldg. Corp. v. Hermann*, 29 Colo.App. 564, 566, 488 P.2d 1126, 1127 (1971) (emphasis added). "When it can, with equal reasonableness, be inferred that the accident in question was *due to another cause than the negligence of defendant*, the doctrine cannot be invoked." *Saliman v. Silk*, 118 Colo. 220, 222, 194 P.2d 304, 305 (1948) (emphasis added) (citing *Yellow Cab Co. v. Hodgson*, 91 Colo. 365, 14 P.2d 1081 (1932) (person making delivery injured when a door fell upon him)). Finally, we note that the determination of whether *res ipsa loquitur* applies is a question for resolution by the trial court as a matter of law. *Oil Bldg. Corp.*, 29 Colo.App. at 566, 488 P.2d at 1127.

presumed to have been negligent. The rear-end collision instruction has generally been applied, however, in cases where both vehicles involved in the accident were located on the road or on the shoulder, were in relatively close proximity, and were facing the same direction. *See, e.g., Bartlett v. Bryant,* 166 Colo. 113, 115, 442 P.2d 425, 426 (1968) (plaintiff's vehicle was halted at the end of a line of cars, stopped for a traffic light, when the car behind her failed to stop and struck the rear of plaintiff's vehicle; this was held to establish prima facie evidence of negligence); *Iacino,* 121 Colo. at 452–53, 217 P.2d at 267–68. *Tracy v. Graf,* 37 Colo.App. 323, 550 P.2d 886 (1976) (trial court should have given rear-end collision instruction because the left front fender of the defendant's car hit the right rear fender of plaintiff's car which was stopped in the road), *rev'd on other grounds,* 194 Colo. 1, 3, 568 P.2d 467, 467 (1977) (because the jury found that the defendant was negligent, failure to give the rear-end collision instruction could not have prejudiced the plaintiff).

In deciding whether the rear-end collision instruction applies to the facts and circumstances presented here, we note that other jurisdictions have applied language which limits the use of this rebuttable presumption under some circumstances. The Missouri courts have described the rear-end collision doctrine as

> the doctrine or rule of law which recognizes that if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is *proceeding,* and some other person *traveling* behind him in the same direction *overtakes* him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the *overtaking* vehicle.

*Doggendorf v. St. Louis Pub. Serv. Co.,* 333 S.W.2d 302, 305 (Mo.App.1960) (emphasis in original) (quoting *Hughes v. St. Louis Pub. Serv. Co.,* 251 S.W.2d 360, 362 (Mo.App.1952)); *see Jones v. Central States Oil Co.,* 350 Mo. 91, 96–99, 164 S.W.2d 914, 916–17 (1942).

The Wisconsin Supreme Court declined to require use of the rear-end collision instruction every time there is "a rear-end collision with a stationary vehicle," holding that the instruction did not always comport with the facts. *Millonig v. Bakken,* 112 Wis.2d 445, 455–57, 334 N.W.2d 80, 86 (1983). In *Millonig,* the court held that "there was evidence from which the jury could infer that the stopping took place upon an unusually slippery spot and that Bakken [the second driver], who testified he was going at a slow rate of speed, was confronted with a situation in which the car unexpectedly skidded." *Id.* at 457, 334 N.W.2d at 86. "[T]he mere fact that Bakken collided with the automobile driven by Millonig, which had just come to a stop, is not, under the decided cases of this court, probative of negligence as a matter of law." *Id; see Covington v. Hughes,* 402 So.2d 198, 200 (La.App.1981) ("It is well settled that a *following motorist* is presumed negligent if he *collides with the rear of a leading motorist, ...*") (emphasis added) (quoted in *Walker v. Insured Lloyds,* 477 So.2d 1222, 1226 (La.App. 1985)); *Clevenger v. Walters,* 419 S.W.2d 102, 106 (Mo.1967) ("[N]ot even all rear-end collisions fall within the [*res ipsa loquitur* ] doctrine.").

The Alaska Supreme Court decided a case in which the driver of a car had a rear-end collision with a motorcycle. *Norris v. Gatts,* 738 P.2d 344 (Alaska 1987). The plaintiff argued that he was entitled to the rear-end collision instruction, but the court rejected this argument. "All of the evidence indicates that Gatts' vehicle was careening around the parking lot out of control [before striking the rear-end of the plaintiff's motorcycle].... A vehicle behaving in this manner is not operating under the circumstances in which this court has recognized a resulting rear end collision to be negligent." *Id.* at 348.

A Michigan statute provides "that there is prima facie evidence of negligence if 'a

vehicle traveling in a certain direction *overtakes and strikes the rear end of another vehicle proceeding in the same direction,* or *lawfully standing upon* any highway.' (Emphasis added.)" *Harmon v. Stanley,* 56 Mich.App. 602, 605, 224 N.W.2d 658, 659 (1974); Mich.Comp.Laws § 257.402(a) (1981).

In light of these decisions, we cannot conclude that the rear-end collision instruction is required as a matter of law in all cases, regardless of the circumstances of the collision, solely because the front of one vehicle makes contact with the rear of another vehicle. Rather, we believe the instruction should be limited, as Judge Pierce states in his dissent, "to those situations in which the negligence followed by the collision occurred while both vehicles were on the roadway or shoulder, in relatively close proximity, and facing in the same direction." *Boring,* 739 P.2d at 886.

### B.

With these principles in mind, we now review the facts and circumstances of the case before us. The trial court's rejection of the tendered instruction was based on the particular facts: "I don't feel that the rear-end instruction is applicable to a vehicle leaving the highway and striking a stationary object, in this case happening to be a car. I think it's not designed for this situation." Before submitting the case to the jury, the judge also ruled that there was no negligence on the part of the plaintiff.[3]

The testimony at trial showed that Bettner's vehicle was not following Boring's

vehicle when the accident occurred. Bettner testified:

> Another car passed me, a yellow one, only he didn't allow a safe distance when he passed. All of a sudden he pulled directly in front of me. He stepped on his brake. His brake lights went on and he started fishtailing, and again, he threw slush up on my windshield.

Bettner was able to avoid a rear-end collision with this car and traveled a short distance before reaching a sanded portion of the highway, where she attempted to brake. There was conflict in the testimony as to what speed she was traveling. She testified that she was traveling about twenty or twenty-five miles per hour when she tapped her brakes and spun out of control —"did a full circle and then slid off to the side into Mr. Boring's car." She estimated that her car slid about 200 feet. "[S]uch a mishap [as a defendant's automobile merely skidding or sliding into collision with a plaintiff's vehicle on the highway] (so the courts hold) may as readily be caused by circumstances beyond defendant's control as by his negligence; ..." *Wray v. King,* 385 S.W.2d 831, 833 (Mo.App.1965). The photograph of the damaged Mustang which was admitted into evidence at trial shows that Bettner's car struck the left rear corner of the Mustang, causing damage to both the left rear and the left side of the vehicle.

Here, we do not perceive the defendant to have been a "following motorist" or an "overtaking vehicle." Bettner was not traveling directly behind Boring; the vehicles were not in relatively close proximity.[4] The reason that Bettner's car collided with Boring's car was not because

---

**3.** The trial court held:

> I would indicate for the record that I am basically directing a verdict in favor of the Plaintiff of no negligence on the part of the Plaintiff. I can't find any facts from which a reasonable Juror would consider the pulling off of the interstate some 12 to 15 feet off the traveled portion to have been negligence on the part of the Plaintiff, ...

**4.** When the other elements of the *res ipsa loquitur* doctrine are met, the doctrine applies "even though plaintiff's negligent acts or omissions

may also have contributed to the injury. Once the trial court rules that the doctrine is applicable, the jury must then compare any evidence of negligence of the plaintiff with the inferred negligence of the defendant and decide what percentage is attributable to each party." *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66, 70 (Colo.1980) (footnote omitted).

The record shows that the three elements of the *res ipsa loquitur* doctrine were not met by the facts of this case, because causes other than the defendant's negligence were not sufficiently eliminated by the evidence. *See supra* note 1.

she was following his car too closely.[5] Boring had already parked the Mustang twelve to fifteen feet off the shoulder of the highway before Bettner reached the area where these accidents occurred. Enough time had passed for Boring to exit his vehicle and inspect the damage, and return to the driver's seat before Bettner lost control of her vehicle, spun a full circle on the ice, and slid into the field where Boring's car was sitting. These facts do not present the " 'clear and simple situation of one vehicle being operated for a considerable distance behind another and overtaking it.' " *Todd v. Presley*, 413 S.W.2d 173, 175 (Mo.1967) (quoting *Rosenfeld v. Peters*, 327 S.W.2d 264, 269 (Mo.1959)); *Clevenger v. Walters*, 419 S.W.2d 102, 106 (Mo.1967) ("[T]his is not the classic case where plaintiff is proceeding directly ahead in his proper lane and defendant runs into the rear end of his vehicle.").

■ We consider these facts to be significantly different from the typical scenario in which one motorist, driving directly behind another, strikes the rear-end of the vehicle directly in front of it. The Alaskan Supreme Court has stated: "[W]e have held that '[o]ne should expect sudden stops in heavy traffic, especially when it has recently been stop-and-go' and that to rear-end a car under these circumstances constitutes negligence as a matter of law." *Grimes v. Haslett*, 641 P.2d 813, 819 (Alaska 1982) (quoting *Hahn v. Russ*, 611 P.2d 66, 67 (Alaska 1980)). In the case before us, it was nothing more than circumstance that caused Bettner's car to slide into the left rear corner of Boring's car rather than the front end or side. The collision was not caused by Bettner's unsafe following of a vehicle being driven ahead of hers, in the same lane of traffic, nor was the plaintiff's car parked on the shoulder or on the highway. Bettner's vehicle slid into the field and struck the left rear corner of the Mustang parked there. We do not believe that such a collision was meant to be the subject of the rebuttable presumption of negligence in rear-end collisions. "It cannot reasonably be maintained that colliding with the *rear* of the [parties'] truck 'bespeaks' negligence any more than colliding with the front of it." *Jensen v. Pappas*, 684 S.W.2d 524, 529 (Mo.App.1984).

We have reviewed the testimony in the record and the holding of the trial court. We conclude that the trial court was acting within its discretion when it ruled that the evidence presented at trial did not support the tendered instruction.

We will not review all of the cases involving application of the rear-end collision doctrine nor undertake herein to define exactly what are the permissible outer limits of any deviation permitted from the basic premise of a following and overtaking vehicle which runs into the rear end of the lead or front vehicle which is traveling in the same direction at a place where it has a right to be. This can be determined satisfactorily only on a case by case basis, but we repeat the caveat ...: "It is not recommended that this theory of recovery be employed except where the facts come strictly within the pattern of the typical rear-end collision situation."

*Clevenger v. Walters*, 419 S.W.2d 102, 107 (Mo.1967) (quoting *Witherspoon v. Guttierez*, 327 S.W.2d 874, 878 (Mo.1959)).

We reverse the court of appeals' ruling and remand the case with instructions to reinstate the jury's verdict.

KIRSHBAUM, J., specially concurs.

QUINN, C.J., dissents.
MULLARKEY, J., joins in this dissent.

KIRSHBAUM, Justice, specially concurring.

I concur in the majority's opinion insofar as it reverses the decision of the Court of Appeals and reinstates the trial court's ruling rejecting the two jury instructions ten-

**5.** Traffic statutes provide that a "driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." § 42–4–908(1), 17 C.R.S. (1984). Violation of this statute is not actionable negligence unless the statutory violation was a proximate cause of the accident. *Gossard v. Watson*, 122 Colo. 271, 274, 221 P.2d 353, 355 (1950).

dered. However, I do so from a quite different analytical perspective.

As I view the case, the question is whether the doctrine of *res ipsa loquitur* applies to the facts of this particular accident. The "rear-end collision instruction" referred to by the attorneys, the trial court, the Court of Appeals and the majority, simply reflects but one specific example of a situation in which the doctrine of *res ipsa loquitur* may apply. *Iacino v. Brown,* 121 Colo. 450, 217 P.2d 266 (1950).

The trial court quite properly rejected instruction No. 1. That instruction was modeled on CJI–Civ.2d 11.12 (1980) (CJI–11.12). The instructions for the use of CJI–11.12 clearly indicate that it is to be used only when applicable and, most importantly, only in conjunction with CJI–Civ.2d 3.5 (1980) (CJI–3.5). CJI–3.5 contains a definition of the term "presumption"; at trial, plaintiff's counsel tendered instruction No. 2 because in two other jury instructions the trial court had used the term "presumption."[1] The majority opinion seems to suggest that an instruction such as tendered instruction No. 1 might be permissible in some circumstances. I believe CJI–11.12 may never be given in isolation. It amounts to an instruction for a directed verdict of negligence in the circumstances of a rear-end collision. The language of CJI–11.12 may only be used in combination with CJI–3.5—as plaintiffs did in their tendered instruction No. 2. Thus, the trial court properly rejected tendered instruction No. 1 because it contained a misstatement of law.

I also agree that the trial court did not abuse its discretion in denying the tendered instruction No. 2 in the circumstances of this case. I do not, however, agree with the majority's opinion that the reason for denial is because the automobile struck in the rear was located ten feet from the highway. I can envision a case wherein a car owner whose vehicle is parked nine feet from the highway and is struck from the rear by another vehicle might be entitled to the *res ipsa loquitur* concept embodied in CJI–3.5, as modified by CJI–11.12. However, the evidence in this case discloses that numerous causes other than the alleged negligence of Bettner could be viewed as having caused Boring's injuries. *Holmes v. Gamble,* 655 P.2d 405 (1982); *Saliman v. Silk,* 118 Colo. 220, 194 P.2d 304 (1948); *Iacino v. Brown,* 121 Colo. 450, 217 P.2d 266 (1950). Bettner testified that just prior to the accident she had reduced her speed; had been passed by three automobiles, with results that twice slush was sprayed upon her windshield; that she was approaching the top of an incline just prior to the accident and observed a car pass her and then cut in quickly and fishtail in front of her, forcing her to apply her brakes; that she had no advance warning of the sudden appearance of an ice patch on the highway prior to the fishtailing of the passing vehicle or prior to seeing the overturned semi-trailer; that she chose to steer her car to the side of the road near an access road to avoid applying brakes on the ice on the highway; and that nevertheless her car spun when she applied the brakes, ultimately striking Boring's vehicle. Because this evidence is sufficient to establish that the accident in question was most probably due to some cause other than the negligence of Bettner, the trial court properly concluded that the doctrine of *res ipsa loquitur* was not available and, therefore, properly rejected tendered instruction No. 2.

For those reasons, I concur in the judgment of the majority.

QUINN, Chief Justice, dissenting:

I dissent from the judgment holding that the trial court did not err in refusing to

---

1. One instruction informed the jury that no negligence could be presumed form the happening of an accident. Another instruction informed the jury that a person is presumed to have knowledge of hazardous conditions which a reasonably prudent person would gain upon reasonable inquiry under the existing circumstances. At trial, plaintiff's counsel argued that a "presumption" instruction—presumably plaintiff's tendered instruction No. 2—was necessary to inform the jury what that term meant in the context of the other two instructions. The record reveals that the trial court understood fully that two different instructions were offered, one a "rear-end collision" instruction, the other a "presumption" instruction; it was rejecting both instructions.

give Boring's tendered instruction on the presumption of negligence arising from a rear end collision. In my view, the court of appeals properly ordered a new trial in this case and its judgment should be affirmed.

Prior to the collision, the plaintiff, Boring, had driven his vehicle off the icy highway into a field and had stopped about ten to fifteen feet beyond the shoulder portion of the highway. Boring's vehicle was stopped in that position when it was struck in the left rear by a pick-up truck driven by the defendant, Bettner. Immediately prior to the collision, Bettner had been driving on the icy highway at approximately twenty to twenty-five miles per hour when she applied her brakes and spun out of control for approximately 20 feet and collided with the left rear of Boring's parked vehicle. Under these circumstances, a rebuttable presumption arises that Bettner, as the driver of the striking vehicle, was negligent and the jury should have been so instructed.[1]

In *Iacino v. Brown*, 121 Colo. 450, 217 P.2d 266 (1950), this court held that there is a rebuttable presumption of negligence when a driver collides with the rear of a vehicle properly parked along the curb line of a highway. In so holding, the court stated that where "defendant was in control of an automobile which collided with the rear end of plaintiff's automobile, without any fault whatever on the part of plaintiff, there is a presumption of negligence sufficient to make a prima facie case." 121 Colo. at 454, 217 P.2d at 268. The court in *Iacino* went on to state that the rear end collision under these circumstances speaks for itself in the sense that the collision would not probably occur in the absence of negligence and "the plaintiff could not reasonably be expected to account for any cause of the accident not within his knowledge." *Id.*

The rule of *Iacino* is clearly applicable here. If, as in *Iacino*, there is a rebuttable presumption of negligence when a driver collides with the rear of a properly parked vehicle on the traveled portion of a road, that same presumption should apply with even greater force when a driver collides with a vehicle parked some ten to fifteen feet distant from the shoulder portion of the road. It should make no difference whether Bettner's vehicle collided with the rear or side of Boring's parked vehicle because in either instance the collision would probably not have been caused if Bettner had been driving on the highway at a safe and reasonable rate of speed under the road conditions existing at the time. The instruction tendered by Boring did no more than tell the jury that the law presumes that Bettner was negligent when she collided with the rear of Boring's vehicle and that the jury may properly consider that presumption with the other evidence in arriving at a verdict, unless the jury is satisfied that the presumption has been outweighed by other evidence in the case.

I believe that the court of appeals properly resolved this case when it noted that Boring, the plaintiff, by parking his vehicle completely off the road, was more cautious than the plaintiff in *Iacino* and that it is illogical to deny him the benefit of the instruction on the presumption of negligence simply "because he was *more* cautious and did move his vehicle farther from the zone of danger." *Boring v. Bettner*, 739 P.2d 884, 885 (Colo.App.1987). I would affirm the judgment of the court of appeals.

I am authorized to say that JUSTICE MULLARKEY joins me in this dissent.

---

1. One of the instructions tendered by Boring stated that "[i]f a motor vehicle is struck from the rear, the driver striking the vehicle is negligent." The trial court rejected this instruction, and I believe it was properly rejected, in that the instruction was the equivalent of a directed verdict on liability for the plaintiff.